IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHARLES H. COLL, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. NO.: 2:08-CV-00345 |
| | § | |
| ABACO OPERATING LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**MIDLAND DEFENDANTS' MOTION TO TRANSFER VENUE UNDER
28 U.S.C. § 1404(a) TO THE WESTERN DISTRICT OF TEXAS, MIDLAND DIVISION**

Defendants Pioneer Natural Resources USA, Inc. ("Pioneer") and Wagner & Brown, Ltd. ("Wagner & Brown') (collectively "Midland Defendants") file this motion to transfer venue to the Western District of Texas, Midland Division pursuant to 28 U.S.C. § 1404(a) based on the following:[1]

I.     **Introduction**

The named Plaintiffs ("Plaintiffs"), none residents of the Eastern District but one of whom resides in Midland, have brought this putative class action lawsuit against 117 defendant oil and gas producers. Plaintiffs claim that the defendants have failed to pay royalty owners and other interest owners their share of severance tax refunds before the refunds are received by the defendants from tax authorities in Texas and New Mexico. Instead of investigating the severance tax accounting procedures of specific oil and gas producers in Texas and New Mexico, Plaintiffs have chosen to indiscriminately sue 117 companies in the Eastern District without regard to whether the defendants have any connection whatsoever with the Eastern District. As a result, Midland Defendants find themselves defending Plaintiffs' claims in

this distant and substantially inconvenient Eastern District forum with which Midland Defendants have practically no connection.

The relevant factors to be considered under § 1404(a) weigh heavily in favor of transfer. Midland is a more convenient forum for litigation against Midland Defendants because their principal places of business, their employees that handle severance tax payments and refunds, and their documents relevant to Plaintiffs' claims are all located in Midland. By contrast, there are no witnesses, documents, or other evidence located in the Eastern District. Plaintiffs cannot claim that the Eastern District is a more convenient forum for litigation against Midland Defendants, because none of the Plaintiffs reside in the Eastern District and Midland Defendants have done little OR no relevant business with Plaintiffs in the Eastern District.

Accordingly, for the convenience of the witnesses and the parties and in the interest of justice, Midland Defendants move for a transfer of venue to the Midland Division of the Western District of Texas, pursuant to 28 U.S.C. § 1404(a). If necessary to effect the transfer to Midland, Midland Defendants request that the Court sever the claims against Midland Defendants from the claims against the other defendants in this action pursuant to Federal Rule of Civil Procedure 21. *See Delce v. AMTRAK*, 180 F.R.D. 316, 320 (E.D. Tex. 1998) (observing that severance is warranted where certain claims are "more properly tried in a different venue").

## II. Background and Summary of Relevant Venue Facts

The venue facts relevant to the Court's determination of this motion to transfer venue are contained in Plaintiffs' First Amended Class Action Complaint and in the sworn affidavits accompanying this motion.[2]

---

[1] Midland Defendants file this Motion subject to, and without waiver of, their previously filed Motion to Dismiss and Motion to Sever.

[2] The facts discussed in this motion occurred in the time period four years prior to Plaintiffs' commencement of this action, since Texas law provides a four-year statute of limitations for breach of royalty contract actions. *See HECI*

2

Plaintiffs have filed suit against 117 oil and gas companies, claiming that the companies have all impermissibly delayed in remitting tax refunds to working interest owners and royalty owners. In Texas and New Mexico, these oil and gas producers pay severance taxes, which are calculated as a percentage of the value of the oil and gas severed from the ground. TEX. TAX CODE ANN. §§ 201.001-201.404, 202.101-202.354; N.M. STAT. §§ 7-29-1 to 7-29-23 (2008). When they calculate severance taxes, oil and gas producers (who are typically the operators) withhold the portion of taxes that are payable on the shares of production attributable to working interest and royalty owners from the amounts the producers owe to these parties. The producers then remit the total severance tax due on the oil and gas they have produced to the relevant state authority.

The oil and gas producers can apply for refunds of the severance tax paid on oil and gas they have produced if the minerals qualify for any one of the severance tax exemptions or credits authorized by statute in Texas and New Mexico. *E.g.* TEX. TAX CODE ANN. §§ 201.053, 201.057-201.059, 202.056-202.061 (2008); N.M. STAT. §§ 7-29A-1 to 7-29A-5 (2008). In this action, Plaintiffs complain about the process the defendants allegedly employ in seeking severance tax refunds. Specifically, Plaintiffs allege that they have been injured because the defendants have not refunded the portion of severance taxes withheld from payments to them *before* receiving their own refund from the state. Plaintiffs also claim that once the producers received refunds from the state, the producers did not properly or timely credit the plaintiffs with their proportionate share of the refunds. Thus, Plaintiffs are asking a single court to adjudicate their claims regarding the alleged improper accounting for tax refunds against 117 defendants

---

*Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998). The statute of limitations under New Mexico law is six years. N.M. Stat. § 37-1-3 (2008); *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 69 (N.M. 1993).

from all corners of Texas, in addition to producers located in Oklahoma, Colorado, and Pennsylvania.

The central issues in this case revolve around the defendants' business practices concerning the payment of severance taxes on the oil and gas they produce, specifically the manner that each defendant accounts to its royalty holders and joint working interest owners for the severance tax refunds it receives from the relevant authorities in Texas and New Mexico. The business practices of Midland Defendants that Plaintiffs are challenging all occurred, if at all, in Midland.

**A.     The accompanying affidavits show that Midland is a more convenient venue than Marshall.**

    **1.     Midland Defendants' principal offices are in Midland.**

Midland Defendants are oil and gas producers with their principal places of business located in Midland. (*See* Affidavit of Teri Pender ("Pender Aff."), Ex. A., at ¶ 3; Affidavit of Lawrence Rhodes ("Rhodes Aff."), Ex. B., at ¶ 3.) No part of Midland Defendants' severance tax refund application and accounting process has occurred in any county located within the Eastern District of Texas. (*Id.*) All of the actions and managerial decisions regarding severance tax refund applications and accounting for the refunds of severance taxes to royalty owners and working interest owners have occurred at Midland Defendants' offices in Midland. (*Id.*)

    **2.     All of Midland Defendants' party witnesses are in Midland.**

None of Midland Defendants' witnesses with knowledge of their severance tax refunds or accounting for severance tax refunds are located in any county within the Eastern District of Texas. (Pender Aff. at ¶¶ 3, 5, 8-9; Rhodes Aff. at ¶¶ 3, 5, 8-9.) Of Pioneer's six witnesses with knowledge of its severance tax refunds or accounting for severance tax refunds,

4

all six are located in the Midland area. (Pender Aff. at ¶3, 5, 8-9.) Those witnesses include Teri Pender, who is responsible for all of the domestic accounting functions for Pioneer, Pioneer employees Craig Holly, Monica Laabs and Don Bromley, and former Pioneer employees Margie Barlow and Christie Collyer. (*Id.* at ¶ 3, 5, 8.) Of Wagner & Brown's three witnesses with knowledge of its severance tax refunds or accounting for severance tax refunds, two are located in the Midland area and one is located in the Houston area. (Rhodes Aff. at ¶ 3, 5, 8-9.) Those witnesses include Lawrence Rhodes, who is responsible for overseeing the reporting and paying of Texas severance taxes, as well as Billy Harris and Bob Snyder. (*Id.* at ¶¶ 3, 5, 8.)

The primary non-party witnesses expected to be called in this case are representatives of the Texas Comptroller's Office, who are located in Austin, Texas, which is also in the Western District. (Rhodes Aff. at ¶ 5.)

3.  **All of Midland Defendants' documents are located in Midland.**

None of Midland Defendants' business records regarding severance tax accounting and severance tax refunds are located in any county within the Eastern District of Texas, rather, they are located at their principal offices in Midland. (Pender Aff. at ¶ 4; Rhodes Aff. at ¶ 4.) These records include applications to the Texas Railroad Commission to certify the wells are eligible for severance tax reductions; applications to the Comptroller's office seeking refunds, and accounting records reflecting credits of severance tax refunds to royalty holders and joint working interest owners. (*Id.*)

4.  **Midland Defendants' have little relevant conduct in the Eastern District.**

Midland Defendants have little or no contact with the Eastern District that is relevant to the issues of severance tax payments and refunds. Midland Defendants have not received any refunds from the Texas Comptroller with respect to production in the Eastern District of Texas associated with wells for which any of the named Plaintiffs have received

royalty or working interest payments from Midland Defendants. (Pender Aff. at ¶¶ 6-7; Rhodes Aff. at ¶ 6.) Moreover, none of Pioneer's operations occurred in the Eastern District. (Pender Aff. at ¶ 7.) As a result, Pioneer paid no severance taxes on production from the Eastern District and, accordingly, it sought no refunds on production from the Eastern District for the vast majority of the time covered by Plaintiffs' allegations. (*Id.* at ¶¶ 3, 6-7.) In short, the claims asserted by the named Plaintiffs against Midland Defendants have little or no connection to the Eastern District of Texas.

**B.  Plaintiffs' complaint fails to demonstrate that venue is more convenient in the Eastern District of Texas.**

Even under Plaintiffs' version of the facts in their First Amended Class Action Complaint, venue is not more convenient or more appropriate in the Eastern District of Texas. First, Plaintiffs have not claimed that they have any relevant connections with the Eastern District. None of the six plaintiffs reside in the Eastern District, nor have any of the Plaintiffs claimed an interest in oil and gas wells in the Eastern District that received severance tax refunds. (*See* Am. Compl., ¶¶ 1-6.)

Second, Plaintiffs do not allege any connection between Midland Defendants and the Eastern District of Texas. In fact, the only statement in the amended complaint that alleges any connection between the defendants in this matter and the Eastern District is the generic statement that "Venue is proper in the Eastern District of Texas . . . because one or more of the defendants reside in the Eastern District of Texas and/or a substantial part of the events or omissions giving rise to the claims occurred in, or a substantial part of the property that is the subject of this action is situated in, the Eastern District of Texas." (*Id.* at ¶ 125.) One searches in vain for any additional allegations that any of the defendants in this case have any connection to the Eastern District.

These sparse allegations stand in stark contrast to the attached sworn statements, which demonstrate that there no connection between the actions of Midland Defendants challenged by Plaintiffs and the Eastern District. Moreover, Plaintiffs have not provided any reason that the Eastern District is a more convenient forum for themselves than the Western District.

### III. Venue should be Transferred Pursuant to 28 U.S.C. § 1404(a)

This case should be transferred for the convenience of the witnesses and the parties and in the interest of justice pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.[3]

The Fifth Circuit requires a district court to weigh in the balance a number of case-specific private and public factors when considering a motion to transfer venue under 28 U.S.C. § 1404(a). The private factors to be considered are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *Volkswagen I*). The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

---

[3] The present actions against Midland Defendants could have been brought in the Western District of Texas under the general venue provisions of 28 U.S.C. § 1391(a). Midland Defendants reside in Midland and the Western District of Texas for venue purposes.

7

A.  **Defendants' burden in the transfer motion is relaxed in class actions where no named plaintiff resides in the forum.**

The Fifth Circuit recently clarified that a plaintiff's choice of forum is not an independent factor to be considered in the transfer analysis, rather the "good cause" burden of a party moving to transfer venue reflects the deference afforded to the plaintiff's choice of forum. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008). (hereinafter *Volkswagen II*). Many courts have noted, however, that a plaintiff's choice of forum is entitled to less deference in class actions. *See e.g. Broadhead Ltd. P'ship v. Goldman Sachs & Co.*, No. CIV.A. 2:06CV009, 2007 WL 951511, at *2 (E.D. Tex. March 28, 2007) (observing that "[t]he choice of forum for class actions is not entitled to the deference normally given to plaintiffs"); *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 15 FEDERAL PRACTICE AND PROCEDURE § 3848 n.13 (3d Ed. 2008) (collecting cases where courts have afforded less deference to a plaintiff's choice of forum in considering a motion to transfer in a class action). The deference afforded a class action plaintiff's choice of forum is similarly reduced when the named plaintiffs do not reside in the chosen forum. *Goldstein v. Radioshack Corp.*, No. 6:06-CV-285, 2007 WL 1342533, at *2 (E.D. Tex. May 1, 2007) ("The significance of the plaintiff's choice of forum is reduced if the forum is not the plaintiff's place of residence. Similarly, a plaintiff's choice of forum is given less weight when the case is a class action.").

Thus, the deference afforded the Plaintiffs' choice of forum should be lower as compared to non-class actions and lower than class actions where at least one named plaintiff resides in the forum. The good cause burden Midland Defendants must demonstrate in order to prevail on the motion to transfer should therefore be relaxed in accordance with the lessened deference due the named Plaintiffs' choice of forum.