# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| CHARLES H. COLL, *et al.*, § § *Plaintiffs,* § § v. § § CASE NO. 2:08-CV-345-TJW ABACO OPERATING LLC., *et al.*, § § *Defendants.* § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgement on Plaintiffs' Front-End Payment Claim (Dkt. No. 997) and Plaintiffs' Cross Motion for Summary Judgment on the same issue (Dkt. No. 1018). Having considered the motions, the briefing by the parties, the evidence, and the applicable law, the Court is of the opinion that Defendants' motion for partial summary judgment should be GRANTED and Plaintiffs' cross-motion should be DENIED on the grounds that section 111.104(f) does not create a private cause of action in favor of Plaintiffs and that Plaintiffs do have not an implied covenant claim for violations of section 111.104(a). The Court does not reach the issue of whether section 111.104(f) applies to severance taxes.

## I. BACKGROUND

Plaintiffs' First Amended Class Action Complaint (Dkt. No. 118) alleges contract, fiduciary duty, equitable, declaratory judgment, and injunctive relief claims against multiple defendants (collectively, "Defendants"). However, the Court dismissed Plaintiffs' breach of lease claim in its order dated March 19, 2010 (Dkt. No. 778). Plaintiffs allege that they are the owners of royalty interests and non-operating working interest in oil and gas properties in Texas and New Mexico that are operated by one or more of the Defendants. Specifically, Plaintiffs

challenge the manner in which Defendants handle severance tax refunds received from the states of Texas and New Mexico. Plaintiffs' allegations fall into two distinct categories. First, Plaintiffs allege that Defendants had a legal obligation to refund severance tax payments to Plaintiffs before Defendants could receive incentives, credits, or refunds from the state of Texas. This is the "front-end payment" claim at issue in Defendants' motion for summary judgment and Plaintiffs' cross-motion for summary judgment. Plaintiffs' front-end payment claim is based on section 111.104(f) of the Texas Tax Code and, thus, only applies to wells operated by the Defendants in Texas. Because Plaintiffs do not cite to any similar New Mexican statute, Plaintiffs' front-end payment claim does not apply to wells operated by Defendants in New Mexico. Plaintiffs also allege that certain Defendants failed to allocate severance tax credits or refunds to Plaintiffs after the Defendants received the refunds from the states of Texas and New Mexico. This second category of claims is not at issue in either Defendants' motion for summary judgment or Plaintiffs' cross-motion for summary judgment.

The state of Texas imposes a severance tax on the production of oil and gas in Chapters 201 and 202 of the Texas Tax Code. Severance taxes are ultimately allocated to all "producers" of oil and gas. *See* TEX. TAX. CODE §§ 201.205 and 202.156 (West 2010). "Producers" is broadly defined to include almost any type of interest in minerals, including operating interests, non-operating working interests, and royalty interests. *See id.* §§ 201.001(5) and 202.001(4). However, instead of having each "producer" file a separate tax report and payment for their interests, the Texas Legislature established a withholding scheme under which all oil and gas severance taxes are to be paid by the first purchaser of oil or gas or, alternatively, by the producer or operator of the wells if certain conditions are met. *See id.* §§ 201.204, 201.2041, 202.153, and 202.145. The portion of the tax allocable to the non-operating working interest owners or royalty

2

interest owners is then withheld or deducted from the payments that would otherwise be due to those parties. *See id.* §§ 201.204(b) and (c), 201.205, 202.253(b), and 202.154. Under this scheme, Plaintiffs—the royalty or non-operating working interest owners—are the "indirect taxpayers" of severance taxes to the state of Texas, and Defendants—the operators of producing oil and gas wells— are the "direct taxpayers" of the severance taxes relating to Plaintiffs' interests. In certain situations, after a request is made to the Texas Comptroller by a Defendant, the Texas Comptroller processes refunds of oil and gas severance taxes pursuant to particular statutory provisions. *See, e.g., id.* §§ 201.057, 201.058, 201.059, 202.052, 202.054, 202.0545, 202.056, 202.057, 202.058, 202.060, and 202.061. Under the Texas Tax Code, absent an assignment, only the person or entity who directly paid the severance tax—the direct taxpayer—may seek a refund from the Comptroller. *See id*. §111.104(b).

In their front-end payment claim, the claim at issue in the pending motions for summary judgment, Plaintiffs allege that the Defendants are not complying with the "front-end" payment requirement of Texas Tax Code § 111.104(f). Section 111.104(f) provides: "No taxes, penalties, or interest may be refunded to a person who has collected the taxes from another person unless the person has refunded all the taxes and interest to the person from whom the taxes were collected." TEX. TAX. CODE § 111,104(f). Based on section 111.104(f), Plaintiffs allege that Defendants have an obligation to give refunds to Plaintiffs before Defendants can obtain the underlying severance tax refunds from the state of Texas. Plaintiffs contend that each time the Texas Comptroller approves a severance tax refund, the Defendants receive notice of the approval prior to actual payment of the refund. It is at that time, after approval but before payment, that Plaintiffs contend Defendants should pay Plaintiffs their pro rata share of the refund.

3

Defendants argue that section 111.104(f) does not apply to severance taxes paid to the state through a statutory withholding scheme as set forth in Chapters 201 and 202 of the Texas Tax Code. Defendants also argue that section 111.104(f) does not grant Plaintiffs a private right of action and, therefore, that Plaintiffs do not have standing to bring their front-end payment claim. Plaintiffs counter that section 111.104(f) requires Defendants to give refunds to Plaintiffs before Defendants can obtain the underlying severance tax refunds from the state of Texas and that it gives Plaintiffs a private right of action to enforce the statute. Plaintiffs also contend that even if section 111.104(f) does not give rise to a private cause of action, Plaintiffs' have a common law right—specifically, an implied covenant claim—to be paid their share of refunds in compliance with that section.

The parties agree that (1) whether section 111.104(f) applies to severance taxes, (2) whether section 111.104(f) gives rise to a private cause of action, and (3) whether Plaintiffs have an implied covenant claim are all legal questions to be decided by the Court about which there are no factual disputes. Given the parties' agreement, the Plaintiffs' front-end payment claim is ripe for consideration on summary judgment. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. ANALYSIS

### A. Whether there is a Private Right of Action under Section 111.104(f)

The Court will first consider whether section 111.104(f) creates a private cause of action, and, therefore, whether Plaintiffs have standing to bring a claim under section 111.104(f). In its ruling on Defendants' motion to dismiss, the Court deferred ruling on this issue until the parties presented more developed summary judgment briefing (Dkt. No. 778). The Court must dismiss a

claim for lack of standing when the plaintiff seeks to enforce rights under a statute that does not grant the plaintiff a private cause of action to sue. *See McCoy v. East Texas Medical Center Regional Healthcare System*, 388 F.Supp.2d 760, 767-68 (E.D. Tex. 2005); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that standing is a "core component" and an "essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]").

Defendants argue that, on its face, section 111.104(f) is a directive to the Comptroller addressing circumstances under which a refund may be paid and that section 111.104(f) does not create an express or implied private cause of action in favor of Plaintiffs. Specifically, Defendants contend that nothing in the language of section 111.104(f) expressly creates a private cause of action for enforcement and that, when read in the context of Chapter 111 of the Texas Tax Code, it is clear that the legislature did not intend to create an implied right of action. Citing *Witkowski v. Brian, Fooshee and Yonge Properties*, Defendants argue that the Legislature created an intricate statutory scheme in Chapter 111 that includes express provisions for enforcement of that scheme and that, under these circumstances, courts should presume that the Legislature did not intend to create additional private rights of action. *See* 181 S.W.3d 824, 831 (Tex. App.—Austin 2005, no pet.). Defendants go on to argue that the fact that the Legislature created express rights of action in favor of the indirect taxpayer in one part of the Tax Code—sections 201.252 and 202.252 expressly creates causes of action in favor of an indirect taxpayer against a first purchaser who withholds severance taxes but fails to pay those taxes to the state—is further evidence that the Legislature did not intend to create an implied right of action under section 111.104(f). *See* TEX. TAX CODE §§ 201.252 and 202.252.

5

In response, Plaintiffs counter that section 111.104(f) was designed to avoid unjust enrichment on the part of direct taxpayers at the expense of indirect taxpayers by ensuring that the indirect taxpayers who bore their share of tax liability be paid their share of any refunds received from the state by the direct taxpayers. Accordingly, Plaintiffs, as indirect taxpayers, are precisely the class of persons that section 111.104(f) seeks to protect. Plaintiffs also cite to section 111.016(a) of the Texas Tax Code, which bars indirect taxpayers like Plaintiffs from seeking refunds directly from the Comptroller. See TEX. TAX. CODE § 111.016(a). Based on this section, Plaintiffs argue that the Legislature must have intended to create a private cause of action allowing indirect taxpayers to sue direct taxpayers under section 111.104(f) since indirect taxpayers can not seek redress directly from the Comptroller.

Whether a statute provides a specific cause of action requires the Court to construe the statutory language as a matter of law. *Witkowski*, 181 S.W.3d at 830 (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 321 (Tex. 2000) (Hecht, J., concurring)). Cases brought pursuant to the Class Action Fairness Act are diversity cases. *See* 28 U.S.C. § 1332 (d)(2); Class Action Fairness Act, Sec. 2(b)(2), Pub.L. 209-2, Feb. 18, 2005, 119 Stat. 4 (stating that one of the purposes of the act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction"). In diversity cases, federal courts must apply state substantive law, here Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir.1997). To determine Texas law, the Court will look to the final decisions of the Texas Supreme Court. *See Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992). "In the absence of a final decision by the

state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." *Id.*; *see also Stanley v. Trinchard*, 500 F.3d 411, 423 (5th Cir.2007).

Under Texas law, the Court's primary objective in construing statues is to give effect to the Legislature's intent. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Courts "must rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Texas Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). Courts interpreting statutes presume that the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *See In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008); *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985). Section 111.104(f) states: "No taxes, penalties, or interest may be refunded to a person who has collected the taxes from another person unless the person has refunded all the taxes and interest to the person from whom the taxes were collected." TEX. TAX CODE § 111.104(f). Nothing in the plain language of section 111.104(f) suggests that the Legislature intended to create an express cause of action for enforcement of this section, nor have Plaintiffs pointed to any express language anywhere else in Chapter 111 creating a private right of action under section 111.104(f).

However, Plaintiffs cite the Texas Supreme Court decision in *Steel v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980), for the proposition that where a statute is enacted or designed to benefit a group of persons, that group has a private right of action when the statute is violated or breached. Plaintiffs argue that the legislative history of section 111.104(f) makes it clear that section 111.104(f) was designed to avoid unjust enrichment on the part of direct taxpayers at the

7

expense of indirect taxpayers by ensuring that the indirect taxpayers who bore their share of tax liability be paid their share of any refunds received from the state by the direct taxpayers. *See* Summary of Legislative History of section 111.104(f), Exhibit C to Plaintiffs' Response, Dkt. No. 1018-3. Plaintiffs, thus, argue that because they are indirect taxpayers, they are included in the class of persons that section 111.104(f) seeks to protect and, consequently, the Court should imply that section 111.104(f) creates a private cause of action on their behalf.

Plaintiffs' reading of *Steel*, however, is flawed. In *Steel*, the owner and residents of a house brought suit against the city for property damage they suffered as a result of the police setting fire to their house in an effort to recapture escaped convicts hiding in the house. *Steel*, 603 S.W.2d at 788. The plaintiffs based their suit on Article 1, section 17 of the Texas Constitution which states that no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation. The court held that by burning the plaintiffs' house the city had destroyed their property under the terms of the Texas Constitution and that governmental immunity did not shield the city. *Id.* at 791. In *Steel*, the Texas Constitution clearly provided for a private cause of action and the real issues decided by the court were whether governmental immunity attached and what constituted the destruction of property requiring compensation under the Texas Constitution. *Id.* at 789-91. Accordingly, Plaintiffs' assertion that *Steel* stands for the proposition that a private right of action can be implied where a statute is enacted to benefit a group of persons is misplaced.

Plaintiffs also cite *Lively v. Carpet Services, Inc.*, 904 S.W.2d 868 (Tex.App.—Houston [1st Dist.] 1995, writ denied), for their proposition that courts should imply a private right of action on behalf of the indented beneficiaries of a statute. In *Lively*, the Houston Court of Appeals for the First District implied a private cause of action under the Texas Construction Trust Fund Act.

8

*Id.* at 871. In doing so, the court stated that "despite the absence of an express provision for a private right of action, a breach of a statutory duty normally gives rise to a private right of action on behalf of the injured person (or group of persons) for whose benefit the statute was enacted." *Id*. However, since the decision in *Lively*, the Texas Supreme Court has made it clear that this is no longer the rule in Texas, to the extent it ever was.

In *Brown v. De La Cruz*, the Texas Supreme Court held that there was no private right of action on behalf of a purchaser of property to enforce a statute providing for a fine for each day that a seller failed to transfer legal title of property after the purchaser's final payment. 156 S.W.3d 560, 566-67 (Tex. 2004). In reaching this conclusion, the Texas Supreme Court noted the contradictory case law in Texas concerning when a statute gives rise to a private cause of action:

> Several courts of appeals have cited a rule of "necessary implication"—that when a legislative enforcement scheme fails to adequately protect intended beneficiaries, the courts must imply a private cause of action to effectuate the statutory purposes. Some cite at the same time a contradictory rule of strict construction—that causes of action may be implied only when a legislative intent to do so appears in the statute as written. The basis for the former rule appears to be federal cases that have now been abandoned in favor of the latter rule. To the extent there has been confusion about the Texas rule, we too disapprove of the former in favor of the latter.

*Id*. at 567 (internal citations omitted). Accordingly, it is apparent that the Texas Supreme Court applies a "strict rule of construction" to statutory enforcement schemes and implies a cause of action only when the Legislature's intent to create a private cause of action is clearly expressed from the language of the statute as written. *Id*. Because this Court is bound by the decisions of the Texas Supreme Court on the substantive issue of statutory interpretation, it too must apply this strict rule of construction and decline to imply a private cause of action where, as here, the language of the statue does not suggest that the Legislature intended to create a private cause of action. Chapter 111 of the Texas Tax Code is titled "Collection Procedures" and clearly relates to

the powers and duties of the Comptroller, not third party taxpayers. Consequently, section 111.104(f) is, on its face, a directive to the Comptroller addressing circumstances under which a refund may be paid to direct taxpayers. Section 111.104(f) states that "[n]o taxes, penalties, or interest may be refunded . . . unless . . ." TEX. TAX CODE § 111.104(f). Thus, the statutory language itself, even under the most expansive reading, does not suggest a legislative intent to create a private cause of action for its enforcement.

Plaintiffs also argue that because indirect taxpayers cannot enforce the dictates of section 111.104(f) by bringing a claim for refund directly to the Comptroller, the Legislature must have intended to create a private right of action for the enforcement of section 111.104(f) by indirect taxpayers against direct taxpayers. In *Fleming Foods of Texas, Inc. v. Rylander*, the Texas Supreme Court held that the plain language of the then-existing section 111.104(b) allowed indirect taxpayers to file for tax refunds directly with the Comptroller without receiving an assignment of refund rights from the vendor, or direct taxpayer. 6 S.W.3d 278, 279-80 (Tex. 1999). Based on this holding, at least one court of appeals held that an indirect taxpayer did not have a private cause of action under section 111.104(f) against a direct taxpayer for refunds of overcharged taxes because the indirect taxpayer could seek tax refunds directly from the Comptroller and this administrative remedy was exclusive. *See Burgess v. Gallery Model Home, Inc.*, 101 S.W.3d 550, 554-58 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Because section 111.104(b) of the Tax Code has now been amended to make it clear that a tax refund claim may only be filed with the Comptroller by the direct taxpayer, Plaintiffs argue that the holding in *Burgess* is no longer applicable. *See* Act of June 2, 2003, 78th Leg., R.S., ch.1310, § 86, Tex. Gen. Laws 4748, 4782 (amending section 111.1-4(b) to read: "A tax refund claim may be filed with the comptroller only by the person who directly paid the tax to this state or by the person's

attorney, assignee, or other successor"). Specifically, Plaintiffs argue that indirect taxpayers have no remedy with the Comptroller for obtaining refunds of overpaid taxes because they cannot directly and administratively file refund claims. Plaintiffs, therefore, argue that section 111.104(f) must be read to provide indirect taxpayers a direct cause of action against direct taxpayers.

However, the Texas Supreme Court made it clear in *Brown* that even if a statute is unenforceable by any public official, attorney, or agency, this alone does not justify an implied private cause of action. *Brown*, 156 S.W.3d at 566. The court noted that the failure to provide any enforcement mechanism for a statute could be the result of legislative mistake, but that such a mistake did not give the court the power to "legislate . . . in order to fill any hiatus" left by the legislature. *Id*. (citation omitted). Consequently, a right of enforcement can only be implied under Texas law when the language of the statute makes it clear that the legislature intended to create a private cause of action and not merely because the statute "fails to adequately protect intended beneficiaries." *Id*. Accordingly, Plaintiffs' argument that the Legislature must have intended to create a private cause of action for enforcement of section 111.104(f) by indirect taxpayers against direct taxpayers because 111.016(a) of the Texas Tax Code bars indirect taxpayers like Plaintiffs from seeking refunds directly from the Comptroller also fails. Nothing in the statutory language or legislative history of section 111.104(f) clearly suggests that the Legislature intended to create a private cause of action on behalf of indirect taxpayers, and the Court cannot and will not guess at the meaning of the legislatures silence on this issue. "When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall*, 246 S.W.3d at 626. Courts "must take statutes as [they] find them and first and primarily seek the Legislature's intent in its

language." *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). Courts are not responsible for omissions in legislation, but they are responsible for a true and fair interpretation of the law as it is written. *Id*.

Had the Legislature intended to create a private right of action for indirect taxpayers, it certainly knew how to do this. Sections 201.252 and 202.252 expressly create causes of action in favor of a producer against a first purchaser who withholds severance taxes but fails to pay those taxes to the state. *See* TEX. TAX CODE § 201.252 ("If a purchaser withholds the amount of the tax imposed by this chapter from payment to a purchaser for the sale of gas and fails to pay the tax as provided . . ., the producer may sue the purchaser to recover the amount of the tax withheld"); *id*. § 202.252 (same for severance taxes withheld on sale of oil). "When a statue explicitly provides certain rights of enforcement, but is silent as to the right sought to be enforced, we may presume that the Legislature intended for that right not to be included." *Witkowski*, 181 S.W.3d at 831 (citing *Touche Ross*, 442 U.S. at 571-72 ("implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best"); *Old Am. County Mutual Fire Ins. Co. v. Sanchez*, 149 S.W.3d 111, 115 (Tex. 2004) ("because we resume every word of a statute has been included or excluded for a reason, we will not insert requirements that are not provided by law")).

For all of these reasons, the Court holds that section 111.104(f) does not create a private cause of action and, accordingly, dismisses Plaintiffs' front-end payment claims for lack of standing. Defendants' motion for summary judgment is GRANTED as to this point, and Plaintiffs' cross-motion for summary judgment on this issue is DENIED.

### B. Breach of Implied Covenant Claim

Plaintiffs also plead their front-end payment claim as a breach of implied covenant claim under their leases with Defendants. Plaintiffs argue that Defendants have an implied covenant to

administer and manage oil and gas leases to comply with applicable Texas tax laws regarding severance taxes, including section 111.104(f). Defendants, however, argue that Plaintiffs' breach of an implied covenant claim fails as a matter of law because there is no authority that recognizes any implied duty on the part of a direct taxpayer to pay Plaintiffs money in advance to cover Plaintiffs' alleged portions for credits, refunds, or exemptions that the direct taxpayer hopes to get in the future.

Even if a statute does not explicitly create a private cause of action, in some circumstances it may establish a standard of conduct that is enforceable under pre-existing common-law actions. *Brown*, 156 S.W.3d at 568. However, the Texas Supreme Court "has not lightly implied covenants in mineral leases." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998). In fact, the Texas Supreme Court has made it clear that

> [a] covenant will not be implied unless it appears from the express terms of the contract that "it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it," and therefore they omitted to do so, or "it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument."

*Id.* (quoting *Danciger Oil & Ref Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941)). Plaintiffs, however, ask the Court to rule that there is an implied covenant in every lease between the potential class members and the defendants without so much as looking at a single lease. Plaintiffs argue that "the implied covenant necessarily includes the obligation and timing of payment of severance refunds to Indirect Taxpayers because there are no contracts that expressly address the subject matter thereof." Plaintiffs' Response at 27, Dkt. No. 1018. However, Plaintiffs have not cited to or provided a single lease to support this assertion. Nor have Plaintiffs cited to a single case suggesting that oil and gas leases give rise to an implied covenant obligating Defendants to give refunds to Plaintiffs before Defendants could obtain the underlying severance

13

tax refunds from the state. Accordingly, Defendants' motion for summary judgment on this point is GRANTED and Plaintiffs' cross motion for summary judgment on this point is DENIED.

### C. Whether Section 111.104(f) Applies to Severance Taxes

Because the Court finds that (1) section 111.104(f) does not create a private cause of action in favor of Plaintiffs and (2) Plaintiffs do have not an implied covenant claim for violations of section 111.104(a), the Court need not reach the issue of whether section 111.104(f) applies to severance taxes.

### III. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' Motion for Summary Judgement of Plaintiffs' Front-End Payment Claim (Dkt. No. 997) and DENIES Plaintiffs' Cross Motion for Summary Judgment on the same issue (Dkt. No. 1018) on the grounds that section 111.104(f) does not create a private cause of action in favor of Plaintiffs and that Plaintiffs do have not an implied covenant claim for violations of section 111.104(a). The Court does not reach the issue of whether section 111.104(f) applies to severance taxes. Plaintiffs' claims alleging that Defendants failed to allocate severance tax credits or refunds to Plaintiffs after the Defendants received the refunds from the states of Texas and New Mexico are not affected by this ruling.

IT IS SO ORDERED

SIGNED this 12th day of May, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE